IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 08-cv-01696 - LTB - CBS

SHARON BRENNA,

      Plaintiff,

v.

KEN SALAZAR, Secretary, U.S. Department of Interior,

      Defendant.

_____

ORDER
_____

      This case is before me on Defendant's Motion for Summary Judgment [Doc # 22].  After

consideration of the motion and all related pleadings, as well as the oral argument held on

February 12, 2010, I grant the motion in part and deny it on part for the following reasons.

## I.  Facts

      In this lawsuit, Plaintiff alleges that Defendant retaliated against her and created a

retaliatory, hostile work environment in violation of Title VII.  The following material facts are

undisputed unless otherwise noted.

      In November of 2001, Plaintiff began employment with the Regional Solicitor's Office as

an Attorney-Advisor, GS-13, in the General Law Division.  From the time she was hired through

January 12, 2004, Plaintiff's immediate supervisor was Gerald O'Nan, Assistant Regional

Solicitor for the General Law Division.  In 2002 and 2003, Mr. O'Nan completed an Employee

Performance Plan and Results Report for Plaintiff on which he rated Plaintiff as "Achieved," as

opposed to "Not Achieved," and commented favorably on Plaintiff's job performance in the attached addendums.  *See* Ex. 1 & 2.

In September of 2003, Mr. O'Nan told Plaintiff and another female employee that he had a relative named "Nettie Whore" and stated that Plaintiff should change her name to that. Plaintiff advised Mr. O'Nan that she was offended by his comment.

On November 21, 2003, Mr. O'Nan met with Plaintiff and another supervisor to discuss Plaintiff's job performance.  In a follow-up memorandum dated December 12, 2003, Mr, O'Nan noted concerns about Plaintiff's job performance that had been expressed by the Bureau of Land Management's ("BLM") acquisitions staff as well as  Plaintiff's disagreement with at least some of these concerns involving a site visit.  *See* Ex. 6.  Other parties present at the site visit have also expressed their opinion that Plaintiff did not behave inappropriately during the visit.  The affidavits from these parties do not address other job performance concerns noted in the December 12, 2003 memorandum or related correspondence from BLM.

In December of 2003, Plaintiff filed a grievance with Robert Comer, the Regional Solicitor, requesting that she be transferred from the General Law Division and Mr. O'Nan's supervision; that she be promoted to Grade GS-14; and that Mr. O'Nan's December 12, 2003 memorandum and related correspondence from BLM be removed from her file.

On January 5, 2004, Plaintiff filed an informal EEOC complaint against Mr. O'Nan. Plaintiff subsequently amended the complaint to add a retaliation claim against Mr. Comer. Shortly after the filing of Plaintiff's EEOC complaint, Mr. Comer assigned Al Kashinski, a GS-15  Attorney Advisor who worked in the General Law Division as the Issue Coordinator for Torts and Special Projects, as Plaintiff's immediate supervisor.  Defendant contends that it did

not transfer Plaintiff to the Resources Division, which was the only other division within the

Regional Solicitor's Office at the time, because she lacked the requisite experience in resource

law.

On April 16, 2004, Plaintiff and Mr. Comer signed a Resolution Agreement resolving her

informal EEOC complaint and grievance against Mr. O'Nan.  The Resolution Agreement states

that it contains the complete understanding between the parties and that:

> By executing this Resolution Agreement, [Plaintiff] withdraws and dismisses,
> with prejudice, her pre-complaint of discrimination and administrative grievance
> identified above, and any other allegation, complaint, grievance or other action
> she has filed or could have filed and agrees not to institute, file or otherwise
> initiate or cause to be instituted, filed or initiated on her behalf, any complaint or
> other action, including civil court litigation, against the Agency, its bureaus,
> offices, agents or employees which has or could have been filed by her through
> the date of execution of this Resolution Agreement.

*See* Ex. A-1.  The Resolution Agreement further provides that Plaintiff is officially reassigned

under the supervision of Mr. Kashinski; that Mr. O'Nan's December 12, 2003 memorandum and

the related correspondence from BLM will be removed from her file; and that she will be

recommended for a promotion to Grade GS-14.  *Id.*  Although not stated in the Resolution

Agreement, Plaintiff contends that it was her understanding that following its execution Mr.

O'Nan would have nothing to do with her work and would continue to be her second-line

supervisor in name only.

Plaintiff was promoted to Grade GS-14 in May of 2004.  In the letter recommending her

for this promotion, Mr. Kashinski indicated that Plaintiff's assigned areas of responsibility under

his supervision included "tort and employee claims, Fish and Wildlife Service enforcement

matters, Freedom of Information Act matters, National Park Service title opinions, and special

projects."  *See* Ex. 9.

3

In June of 2005, Mr. Kashinski denied Plaintiff authorization to attend a half-day training seminar put on by the U.S. Attorney's Office with an agenda that included electronic case filing and discovery.  On August 16, 2005, Plaintiff expressed interest in attending a leadership conference but received no response from Mr. Comer.  Two other staff attorneys, including one that was a GS-12, were allowed to attend the conference.

On August 23, 2005, Plaintiff sent an email to Mr. Kashinski wherein she stated

> ... although I am a GS-14, I have little GS-14 work.  In fact, I have little work at all. ... The truth is that there is not enough work in Torts and Special Projects to support two full-time positions.
>
> As you know, promotion to GS-14 was part of my settlement agreement. Promotion in name only, without corresponding duties, is noncompliance with the terms of the agreement.

*See* Ex. A-2.  After forwarding Plaintiff's email to Mr. Comer and Mr. O'Nan, Mr. Kashinski responded that, based on his experience, he believed the work Plaintiff was doing was Grade GS-14 work and that he was unaware of the terms of the Resolution Agreement.  *See* Ex. A-2 & 15.  Mr. Kashinski did not conduct an informal survey of other Solicitor's Offices as requested by Mr. Comer to determine how they assigned the work being done by Plaintiff.

After the exchange of emails regarding the nature and volume of Plaintiff's work, Mr. Kashinski received two employment cases involving EEOC complaints from Mr. O'Nan and told Plaintiff to choose one.  Plaintiff advised Mr. Kashinski that she could not work on either of the cases because doing so would require her to be subject to Mr. O'Nan's authority contrary to the terms of Resolution Agreement.

On August 31, 2005, Mr. Kashinski issued a memorandum to Plaintiff with the subject heading "Refusal to Accept Work Assignment; Request for Written Explanation."  In this

memorandum, Mr. Kashinski asked Plaintiff to provide him with a detailed and complete written explanation of why she believed her refusal to work on the employment cases "was appropriate and within [her] rights as an employee." *See* Ex. A-4.  Mr. Kashinski further advised Plaintiff that he, not Mr. O'Nan, would be supervising her work on the case. *Id.*  In her written response, Plaintiff stated that she was refusing the case because accepting it would require her to be subject to the authority of Mr. O'Nan and because she believed the case was being assigned to her in retaliation for her saying that she was going to re-open her discrimination case for breach of the Resolution Agreement. *See* Ex. A-5.

On September 6, 2005, Mr. Kashinski issued a memorandum to Plaintiff with a subject heading of "Reprimand for Refusal to Accept Work Assignment."  In this memorandum, Mr. Kashinski stated he found that neither Plaintiff's response to his previous email asking her to explain her refusal to accept the employment case nor the terms of the Resolution Agreement justified her actions. *See* Ex. A-6.  Mr. Kashinski further directed Plaintiff to begin work on the employment case and cautioned her that another refusal to accept a valid work assignment would lead to the initiation of disciplinary action more severe than a written reprimand. *Id.*  In her written response, Plaintiff reiterated her concerns about Mr. O'Nan and stated that she would work with him "when an EEOC judge says [she has] to." *See* Ex. 21.  Plaintiff also filed a notice of "Noncompliance with Resolution Agreement" on September 27, 2005, and Mr. Kashinski received notice that she did so that same day. *See* Ex. 22.

On September 28, 2005, Mr. Kashinski issued a memorandum to Plaintiff wherein he assigned her a different employment action involving an EEOC complaint.  Mr. Kashinski further stated that he would coordinate with Mr. O'Nan for any required approval for settlement

of the case in order to accommodate Plaintiff's desire to avoid direct contact with Mr. O'Nan. *See* Ex. A-7.  Plaintiff responded that Mr. Kashinski's offer to coordinate with Mr. O'Nan on settlement did not alleviate her concerns about Mr. O'Nan's involvement with the case.  *See* Ex. 23.

On October 6, 2005, Mr. Kashinski proposed suspending Plaintiff for 14 days for her "misconduct of refusing to perform assigned duties as directed."  *See* Ex. A-8.  Plaintiff asked Mr. Kashinski to withdraw the proposal and provided correspondence from her physician and therapist stating that it would be harmful to Plaintiff if she was suspended or placed under the direct authority of Mr. O'Nan.  *See* Ex. 27.  Plaintiff also filed a formal EEOC complaint alleging a hostile work environment for being deprived of meaningful work and opportunities for training and awards and for the suspension proposal.  Mr. Kashinski forwarded Plaintiff's response to his suspension proposal to Mr. Comer.

On December 5, 2005, Mr. Comer accepted the proposal to suspend Plaintiff, and Plaintiff was suspended for 14 days effective December 6, 2005.  In support of this decision, Mr. Comer cited, among other things, concerns about Plaintiff's job performance that BLM had raised in 2003, the documentation of which had been removed from Plaintiff's file in accordance with the Resolution Agreement.  *See* Ex. A-10.  In connection with her suspension, Plaintiff was required to turn in her keys, credit card, and federal ID and was escorted from the building. Plaintiff returned from her suspension on December 20, 2005 and was assigned an employment case by Mr. Kashinski.  Plaintiff did not refuse to work on this case.

On January 27, 2006, Plaintiff received her performance appraisal for June through December 2005.  Under the Department of the Interior ("DOI") rating system, employees are

rated on a scale of 1 (Unsatisfactory) to 5 (Exceptional) in various categories and are then given an overall rating based on the category ratings. Though Plaintiff alleges that Mr. Kashinski had previously threatened to rate her a 1 in some categories, he rated Plaintiff a 2 (Minimally Successful) or a 3 (Fully Successful) in each category and gave Plaintiff an overall rating of 2. Mr. Kashinski rated Plaintiff a 2 in two categories because she had refused to accept work on an employment case three times during the rating period.

In August of 2006, Plaintiff submitted a letter from her doctor recommending that she take a temporary medical leave of absence from her job "[d]ue to her psychological condition." In response, Mr. Kashinski sent Plaintiff a letter requesting a written statement from her doctor specifying the duration of the recommended leave and a written statement from Plaintiff requesting a specific amount of advanced sick leave for that purpose. Plaintiff provided the requested information on September 1, 2006, and Plaintiff's request for advanced sick leave was approved on October 12, 2006.

In February of 2007, Plaintiff received discovery from Defendant in EEOC Case No. OS-06-001 that included information about performance awards and ratings received by other attorneys in the Regional Solicitor's Office. After Plaintiff discussed some of this information with a few of her co-workers, Mr. O'Nan issued a memo drafted by Mr. Kashinski to all staff advising them of the disclosed information; possible corresponding violations of policy and law; and punitive actions that may be taken including discipline and criminal sanctions. Although she was not identified in this memo, Plaintiff has presented evidence her co-workers nonetheless knew that it was directed towards her. A motion to sanction Plaintiff based on the disclosures

was also filed in Plaintiff's EEOC case.  This motion was denied by the administrative law judge on March 26, 2007.

At some point, after discussion between Mr. Kashinski, Mr. O'Nan, and others, the matter of Plaintiff's disclosure of performance awards and ratings information was referred to the Office of Inspector General (the "OIG").  The OIG responded that it did not have the resources to investigate the matter and suggested that the matter be referred to a DOI bureau that had law enforcement personnel.  Associate Solicitor Edward Keable then contacted BLM.  By letter dated July 31, 2007 BLM's Chief of Internal Affairs authorized Special Agents Randy August and Jeanne Proctor to conduct an investigation into the allegations that Plaintiff had improperly disclosed information obtained in her EEOC case.  The BLM agents undertook the authorized investigation.

On October 18, 2007, Plaintiff received a rating of 3 (Fully Successful) on her performance appraisal.  In completing this appraisal, Mr. Kashinski did not consider Plaintiff's work on an employment case because it was related to allegations in her pending EEOC case. Plaintiff asserts that she would have received a higher rating if Mr. Kashinski had considered the employment case while Mr. Kashinski asserts that Plaintiff's work on the case would not have justified a higher rating.

On October 22, 2007, Plaintiff filed a formal EEOC complaint in which she alleged that she was being retaliated against by the investigation into what she had done with materials obtained in discovery in her EEOC case and by her performance appraisal where she was given a rating of 3 with no consideration given to her work on the employment case.

On November 17, 2007, the BLM completed its investigation into Plaintiff's disclosure of performance awards and ratings information obtained in connection with her EEOC case.  The investigation confirmed that Plaintiff had disclosed such information but "[could] not sustain a finding that such disclosure was improper."  There is sufficient evidence to support an inference that Mr. Comer or others in the Regional Solicitor's Office knew or should have known the results of the investigation in December of 2007.  Plaintiff asserts that no one advised her of the results of the investigation and that she only learned of them in May of 2008 when she read a statement provided by Mr. Keable in connection with her EEOC complaint.

## II.  Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained

in the  complaint but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323.  The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

To establish a prima facie case under Title VII for retaliation, a plaintiff must show (1) that plaintiff engaged in protected activity; (2) that a reasonable employee would have found the challenged employment action materially adverse; and (3) that there is a causal connection between the protected activity and the materially adverse employment action. *McGowan v. City of Eufala,* 472 F.3d 736, 741 (10th Cir. 2006).  Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  If the employer does so, the burden shifts back to the plaintiff to show that the employer's reasons are pretextual. *Id.*  If there is reason to believe that the employer's reasons are pretextual, the case may be submitted to the jury. *Id.*

There is no dispute that Plaintiff engaged in protected activity and can satisfy the first element of a prima facie case for retaliation. The issues raised by Defendant's motion for summary judgment primarily concern Plaintiff's ability to satisfy the second and third elements of a prima facie case of retaliation. Defendant's motion addresses these issues with respect to each alleged discrete adverse employment action and separately addresses Plaintiff's claim for hostile work environment, and I will do likewise.

## A. Fourteen Day Suspension

Defendant concedes that Plaintiff's fourteen day suspension was a materially adverse action but argues that Plaintiff cannot establish a causal connection between her protected activity and the suspension or the existence of a triable issue as to pretext. I agree that Plaintiff has failed to establish a triable issue on the question of whether Defendant's proffered reasons for the suspension are pretextual.

The causal connection between protected activity and adverse employment action can be inferred if the action occurs within a short time of the protected activity. *McGowan*, 472 F.3d at 744. Unless there is "very close temporal proximity" between the protected activity and the retaliatory action, however, the plaintiff must offer additional evidence to establish the causal connection. *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001).

Here, Mr. Kashinski first proposed that Plaintiff be suspended for fourteen days on October 6, 2005, which is nine days after he was made aware that Plaintiff had filed a notice alleging Defendant's breach of the Resolution Agreement. Mr. Kashinski also attempted to assign Plaintiff another employment case between the time Plaintiff filed the noncompliance notice and the date he proposed the fourteen day suspension, and a jury could conclude that the

proposal was merely the direct result of her refusal to work on that case.  But I am satisfied that the close temporal proximity between Plaintiff's filing of the noncompliance notice and Mr. Kashinski's proposal which resulted in her fourteen day suspension are sufficient to establish the requisite causal connection between the two events.

The burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's fourteen day suspension.  Defendant meets this burden by citing evidence set forth in greater detail above of Plaintiff's repeated refusal to work on employment cases assigned to her which Defendant deemed was unjustified.

Plaintiff must now demonstrate that there is reason to believe that Defendant's stated reason is pretextual; that is, that Defendant's stated reason for the fourteen day suspension is "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."  *Stover v. Martinez,* 382 F.3d 1064, 1071 (10th Cir. 2004).  To demonstrate pretext, Plaintiff first emphasizes the timing of all of the adverse actions, including her suspension, in relation to her protected activity.  But, "while timing can suffice to support a prima facie case of discrimination, it will not satisfy a Title VII plaintiff's burden to respond to an articulated, non-discriminatory reason for the challenged adverse employment action."  *McGowan*, 472 F.3d at 744 n. 4.

Plaintiff also argues that her suspension was "unduly severe" because it ignored her work and health history and was predicated on unsubstantiated and tainted evidence of prior issues with Plaintiff's job performance that were removed from her file under the terms of the Resolution Agreement.  These arguments fail to raise a triable issue that Defendant's stated reasons for the suspension were pretextual.  Although Plaintiff maintains that the concerns raised about her job performance in 2003 were without merit, the fact remains that these concerns were

12

raised by BLM, not Mr. O'Nan, as reflected by the correspondence attached to Mr. O'Nan's December 12, 2003 memorandum.  Furthermore, there is but one brief reference to these concerns in the suspension decision, and the terms of the Resolution Agreement do not expressly prohibit Defendant from considering them when assessing Plaintiff's work history.   And, Plaintiff's suspension followed a written reprimand and lengthy email/written exchanges attempting to otherwise resolve Plaintiff's refusal to accept work assignments on employment cases from Mr. Kashinski.  Finally, the evidence demonstrates that Mr. Kashinski and Mr. O'Nan did not ignore Plaintiff's health history but rather found that it was not a mitigating factor in the suspension recommendation and decision.

Finally, Plaintiff argues that pretext can be inferred from the fact that Mr.Kashinski "blatantly ignored two work assignments ... and received no discipline whatsoever."  Although Plaintiff can establish pretext through disparate treatment, she bears the burden of showing that she was similarly situated to Mr. Kashinski in all relevant respects.  *McGowan*, 472 F.3d at 745. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  *Id.* (*quoting Aramburu v. Boeing Corp.,* 112 F.3d 1398, 1404 (10th Cir. 1997)).  "Moreover, even employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant."  *Id.*

Applying this standard, Plaintiff has failed to present sufficient evidence of disparate treatment to warrant submission of the question of pretext to the jury.  In one of the instances cited by Plaintiff,  Mr. Kashinski initially refused a project from the head of the Resources Division of the Regional Solicitor's Office, a separate division from the General Law Division in

which Plaintiff and Mr. Kashinski worked, but later offered to complete it.  In the other instance,

Mr. Kashinski did not tell Mr.Comer that he would not do the requested survey of how other

Solicitor's Offices handled work assignments, and there is no evidence that Mr. Comer knew

that Mr. Kashinski had in fact only contacted one other office.  In neither of the two instances of

work refusal by Mr. Kashinski relied on by Plaintiff then did Mr. Kashinski communicate an

express and repeated refusal to do work assigned to him by his supervisor.  Mr. Kashinski's

conduct was therefore not of comparable seriousness to that of Plaintiff to support an inference

of pretext based on disparate treatment.  Notably, Plaintiff was supervised by Mr. Kashinski but

Mr. Kashinski was supervised by Mr. Comer.

Because I conclude that Plaintiff has failed to present a triable issue as to whether the

reasons for her fourteen day suspension are pretextual, Defendant is entitled to judgment as a

matter of law on Plaintiff's claim that the suspension was retaliatory.  I will give further

consideration to Plaintiff's suspension, however, in the context of Plaintiff's claim for a hostile

work environment which will be addressed separately in this Order.

**B.  Investigation of Privacy Act Violations**

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation by the

investigation into her disclosure of performance awards and ratings of her co-workers because

the investigation was not a materially adverse employment action and there is no causal

connection between the investigation and Plaintiff's protected activity.  Defendant also argues

that Plaintiff cannot establish a triable issue as to pretext.  I disagree.

A challenged employment action is materially adverse if "it might well have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern*

*& Santa Fe Ry. v. White,* 548 U.S. 53, 68 (2006) (citations omitted).  "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* Claims of adverse action are analyzed under a "case-by-case approach, examining the unique factors relevant to the situation at hand." *McGowan*, 472 F.3d at 742 (citations omitted).

Under the second element of a prima facie case of retaliation then, the question is whether a reasonable person would be deterred from making or supporting a charge of discrimination if they knew they would be subject to the type of investigation that was conducted into Plaintiff's disclosure of information obtained through discovery in her EEOC case.  Plaintiff has presented evidence that her co-workers and other parties working in various agencies throughout the federal government knew that she was suspected of violating the law and agency policy and that she remained under this cloud of suspicion for an extended period of time.  This evidence creates a genuine issue of material fact as to whether the attendant humiliation and damage to one's reputation would have a deterrent effect on a charging party.  I must therefore reject Defendant's argument that the investigation into Plaintiff's disclosure of performance awards and ratings did not constitute an adverse employment action as a matter of law.

Turning to the causal connection element of a prima facie case of retaliation, Mr. Kashinski has stated that he first began analyzing whether Plaintiff improperly disclosed information about other employees immediately after he learned of the disclosures and that he hand delivered a memo on the matter to the OIG a few days later.  *See* Ex. 37.  Plaintiff asserts that this date would have been on or about March 1, 2007.  The evidence shows that the discovery information was provided by Defendant by letter dated February 16, 2007, or less than three weeks earlier.  *See* Ex. 33.  Thus, the requisite causal connection may be inferred from the

fact that the investigation into Plaintiff's disclosure of information about other employees was commenced within a short time of Plaintiff's protected discovery activity to support her retaliation claims.  *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) ("[A] one and one-half month period between protected activity and adverse action may, by itself, establish causation").

The burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for the investigation of Plaintiff's actions.  Defendant meets this burden by presenting evidence that the investigation was initiated because Mr. Kashinski believed that Plaintiff's disclosure of information about the performance awards and ratings of other employees could be a violation of the Privacy Act and/or agency policies and that agency regulations required him to refer the matter to the OIG.

Plaintiff must now demonstrate that there is reason to believe that Defendant's stated reason is pretextual or "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."  *Martinez, supra.*  Under pretext analysis, "[t]he relevant inquiry is not whether [the] proffered reasons were wise, fair, or correct, but rather whether [the responsible parties] believed those reasons to be true and acted in good faith upon those beliefs."  *Piercy v. Maketa,* 480 F.3d 1192, 1200 (10th Cir. 2007) (citations omitted).  "Even a mistaken belief can be a legitimate, nonpretextual reason for an employment decision."  *Id.*  Again, the timing of the investigation is inadequate to support a finding of pretext.  *McGowan*, *supra.*

Notwithstanding the subjective standard that is applicable under pretext analysis, I conclude that Plaintiff has demonstrated that there is a triable issue as to whether Mr. Kashinski was motivated by a good faith belief that Plaintiff's actions may have violated the law in

16

initiating what resulted in a lengthy BLM investigation into those actions.  First and foremost, the fact that the investigation was inextricably related to Plaintiff's pursuit of her EEOC case could support a finding that Mr. Kashinki's assertion that it was initiated for separate, independent reasons implausible and unworthy of belief.  Although Defendant attempts to overcome the suspect link between the investigation and Plaintiff's EEOC case by focusing on the involvement of Mr. Keable, OIG personnel, and BLM personnel, there is scant evidence to establish that any of these parties undertook an independent inquiry into whether an investigation into Plaintiff's conduct was warranted though the investigation itself may have been conducted independently.  *See EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles,* 450 F.3d 476, (10th Cir. 2006) ("... the issue is whether the biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action.").  Furthermore, evidence that Plaintiff was never advised of the favorable outcome of the investigation casts doubt on whether its true purpose was to determine whether Plaintiff's conduct violated the law rather than to punish Plaintiff and discourage her pursuit of the EEOC case.

Although close, viewing the evidence in the light most favorable to Plaintiff as I must, I conclude that Plaintiff can satisfy all of the elements of a prima facie case of retaliation and establish pretext with respect to her claim that the investigation into her disclosure of information obtained through discovery in her EEOC case was retaliatory.  Defendant is therefore not entitled to judgment as a matter of law on this claim.  I will give further consideration to the investigation in the context of Plaintiff's claim for a hostile work environment.

**C.  Performance Appraisal Dated January 27, 2006**

Defendant argues that Plaintiff cannot establish a causal connection between her protected activity and her performance appraisal dated January 27, 2006 or a triable issue as to pretext.  I agree.

Plaintiff's protected activity that was closest in time to her January 27, 2006 performance appraisal was her filing of a formal EEOC complaint on October 20, 2005.  A three month period of time between events, standing alone, is insufficient establish causation.  *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997).  Plaintiff must therefore present additional evidence to establish causation.  The parties disagree about the applicable causation standard.  Relying on *Vialpando v. Johanns,* 619 F. Supp. 2d (D. Colo. 2008), Defendant argues that Plaintiff must prove that she would have received a higher performance rating "but for" the fact that she engaged in protected activity.  Relying on case law from the Eleventh Circuit, Plaintiff argues that she need only show that the performance rating and her protected activity were not "wholly unrelated."  *See e.g. Goldsmith v. City of Amore,* 996 F.2d 1155, 1163 (11th Cir. 1993).  Accordingly, before I can analyze Plaintiff's ability to establish the requisite casual connection, I must first determine the applicable causation standard.

In *Vialpando*, the plaintiff filed a motion for a new trial of her retaliation claims under Title VII arguing in part that the district court erred in instructing the jury that she had to prove that "but for" her protected conduct, the defendant would not have taken an adverse action against her.  Instead, the plaintiff argued that she only had to prove that her protected conduct was a "motivating factor" in the adverse action.  Before concluding that the "but for" standard was the correct standard in a pretext-type retaliation case such as this, the district court noted that

18

such claims are analyzed under a modified version of the *McDonnell-Douglas* framework in determining whether there is sufficient evidence to survive a challenge on summary judgment but that this framework "drops out" when the case is submitted to the factfinder at trial. *Vialpando*, 619 F. Supp. 2d at 1111-12.  Nonetheless, it makes little sense to analyze the merits of Plaintiff's claims on summary judgment under a different standard than what Plaintiff would have to prove at trial, and I find the analysis in *Vialpando* supporting the district court's conclusion that the "but for" standard for causation applies to pretext-type retaliation claims under Title VII persuasive.  Additionally, in addressing the element of pretext in a retaliation claim under Title VII, the Tenth Circuit noted that "[t]he fact finder must be able to conclude 'discrimination was a determinative factor in the employer's actions.'"  *Piercy*, 480 F.3d at 1201 (citation omitted).  Discrimination or retaliation can only be a "determinative factor" in an employer's actions if the actions would not have occurred but for the discrimination or retaliation.  To establish that there is a causal connection between her protected activity and her January 27, 2006 performance appraisal then in the absence of close temporal proximity, Plaintiff must show that retaliatory intent was the "but for" or "determinative" cause of  the negative appraisal.  This, Plaintiff is unable to do.

I further conclude that Plaintiff is unable to establish a triable issue as to pretext. Defendant asserts that Mr. Kashinski gave Plaintiff an overall rating of 2 for "Minimally Successful" because she had received the same rating of 2 in critical elements 1 (Client Services and Development) and 5 ("Employee provides legal services as requested by client agencies ...") based on her repeated and undisputed refusal to work on employment cases assigned to her.

Under these circumstances, it cannot be said that Defendant's explanation of Plaintiff's January 27, 2006 performance appraisal is unworthy of belief or that the appraisal was retaliatory.

Because I conclude that Plaintiff has failed to establish the requisite casual connection or a triable issue as to pretext, Defendant is entitled to judgment as a matter of law on Plaintiff's claim that her January 27, 2006 performance appraisal was retaliatory.  I will give further consideration to this performance appraisal in the context of Plaintiff's claim for a hostile work environment.

**D.  Performance Appraisal Dated October 16, 2007**

Defendant argues that Plaintiff cannot establish a prima facie case of retaliation by her October 16, 2007 performance appraisal on which she received an overall rating of 3 for "Fully Successful" because the appraisal was not a materially adverse employment action and there is no causal connection between the investigation and Plaintiff's protected activity.  Defendant also argues that Plaintiff cannot establish a triable issue as to pretext.  I agree that Defendant's October 16, 2007 performance appraisal did not constitute a materially adverse employment action as a matter of law and therefore need not consider Defendant's arguments regarding causation and pretext.

In assessing whether Plaintiff can demonstrate that her October 16, 2007 performance appraisal constituted a materially adverse employment action, I must determine whether a reasonable person would be deterred from making or supporting a charge of discrimination if they knew they would subsequently receive an overall performance rating of 3 on a scale from 1 to 5. Plaintiff presents no evidence that this rating resulted in any negative consequences to her compensation or affected her job responsibilities.  In the absence of such evidence, I conclude

20

that Plaintiff's October 16, 2007 job performance constituted, at most, the type of "petty slight" that is not actionable under a Title VII retaliation claim. *See also Burlington Northern,* 548 U.S. at 68 ("We speak of *material* adversity because we believe it is important to separate significant form trivial harms").

Because I conclude that Plaintiff cannot establish the first element of a prima facie case of retaliation, Defendant is entitled to judgment as a matter of law on Plaintiff's claim that her October 16, 2007 performance appraisal was retaliatory. I will give further consideration to this performance appraisal in the context of Plaintiff's claim for a hostile work environment.

## E. Work Assignments

Plaintiff's specific allegations regarding her work assignments are that she was denied work commensurate with experience and grade level; was forced to work under Mr. O'Nan's supervision; was given an undesirable job assignment, *ie.* an employment case, after she complained of having no work and breach of the Resolution Agreement; and was not given assignments from the Resources Division. Defendant argues that Plaintiff cannot establish a prima facie case of retaliation through her work assignments after she alleged breach of the Resolution Agreement in August of 2005 because these assignments do not constitute materially adverse employment actions and there is no causal connection between the assignments and Plaintiff's protected activity. I agree that Plaintiff fails to present a triable issue that she was subjected to a materially adverse employment action through her work assignments and therefore need not consider Defendant's causation argument.

By signing the Resolution Agreement, Plaintiff consented to continued employment in the General Law Division, and there is no evidence to support a finding that employees in the

General Law Division were regularly given the opportunity to work on projects in the separate

Resources Division when there was work available in their own division.  Plaintiff also

acknowledges that she handled an employment case prior to execution of the Resolution

Agreement.  Under these circumstances, there is insufficient evidence that the nature of the work

assigned to Plaintiff after she alleged a breach of the Resolution Agreement constituted an

adverse employment action let alone a materially adverse employment action.  Plaintiff's

allegation that she was denied work commensurate with her grade level and experience similarly

fails to establish that Plaintiff was subjected to a materially adverse employment action.

Specifically, Plaintiff fails to identify other work available for assignment to her other than

resources projects which were the province of the Resources Division and employment cases

that she characterizes as "undesirable" and objectionable under the terms of the Resolution

Agreement.

Plaintiff's only remaining claim of materially adverse employment action with respect to

her work assignments is that she was forced to work under Mr. O'Nan's supervision.  But there

can be no genuine dispute that Mr. O'Nan was to have no supervisory authority over Plaintiff or

direct interaction with her on employment cases assigned to her, and I conclude that a reasonable

person would not be deterred from making or supporting a charge of discrimination solely on the

basis that Mr. O'Nan had ultimate settlement authority over cases assigned to them.

Because I conclude that Plaintiff cannot establish the first element of a prima facie case

of retaliation, Defendant is entitled to judgment as a matter of law on Plaintiff's claim that her

work assignments after she alleged breach of the Resolution Agreement in August of 2005 were

retaliatory.  I will give further consideration to this issue in the context of Plaintiff's claim for a hostile work environment.

**F.  Denial of Transfer to Resources Division**

Plaintiff's response to Defendant's summary judgment motion does not show how the denial of her request for a transfer to the Resources Division in December of 2004 constituted a materially adverse employment action or address Defendant's arguments on this point.  In any event, it is clear that Plaintiff cannot establish a prima facie case of retaliation with respect to this denial.

With no real evidence establishing the qualifications of Plaintiff or other individuals who were hired into the Resources Division, there is no basis to conclude that the denial of Plaintiff's transfer request constituted a materially adverse employment action.  *See Simms v. Okla. ex rel Dept. of Mental Health,* 165 F.3d 1321, 1329 (10th Cir. 1999) (employee's own opinions about his qualifications do not give rise to a material factual dispute).   Additionally, Plaintiff cannot rely on temporal proximity to establish the requisite causal connection because the transfer denial occurred eight months after Plaintiff last engaged in protected activity through negotiation and execution of the Resolution Agreement, and Plaintiff has presented no additional evidence of retaliatory motive for the denial.  *See Piercy,* 480 F.3d at 1198-99 (passage of time will not necessarily bar retaliation claim if additional evidence establishes retaliatory motive).

Because I conclude that Plaintiff cannot establish a prima facie case of retaliation, Defendant is entitled to judgment as a matter of law on any claim that the denial of Plaintiff's request for a transfer to the Resources Division in December of 2004 was retaliatory.  I will give

23

further consideration to this issue in the context of Plaintiff's claim for a hostile work environment.

**G.  Denial of Training Opportunities**

Plaintiff's response to Defendant's summary judgment motion generally alleges that the denial of training opportunities to her constituted a materially adverse employment action but does not address Defendant's arguments regarding the merits of this claim.  Specifically, Defendant argues that Plaintiff's retaliation claim based on the alleged denial of training opportunities must fail because Plaintiff's request to attend a half-day training conference in June of 2005 and a leadership conference in August of 2005 were not materially adverse employment actions; there is no causal connection between the denial of these requests and Plaintiff's protected activity; there is no triable issue as to pretext; and Plaintiff has failed ot exhause administrative remedies regarding this claim.  I agree that Plaintiff cannot establish that the denial of these training requests constituted materially adverse employment actions and therefore need not consider Defendant's other arguments.

Plaintiff has not presented any evidence that participation in either of the training programs was a prerequisite to any work assignments or position of employment in the Regional Solicitor's Office or that anyone who participated in the training programs received any tangible job benefit.  Absent such evidence, I conclude that the denial of Plaintiff's requests to attend these programs was not significant enough to deter a reasonable person from making or supporting a charge of discrimination.  *See Burlington Northern,* 548 53, 68 ("...petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.").

Because I conclude that Plaintiff cannot establish a prima facie case of retaliation, Defendant is entitled to judgment as a matter of law on any claim that the denial of training opportunities to Plaintiff in June and August of 2005 was retaliatory.  I will give further consideration to this issue in the context of Plaintiff's claim for a hostile work environment.

## H.  Request for Advanced Sick Leave

Plaintiff argues that Defendant retaliated against her by requesting additional information when she requested advance sick leave and not approving her request for several weeks. Defendant argues that its handling of Plaintiff's request for advance sick leave does not constitute a materially adverse employment action and that Plaintiff cannot establish a triable issue as to pretext.  I agree that Defendant's handling of Plaintiff's request for advanced sick leave does not constitute a materially adverse employment action as a matter of law and therefore need not consider Defendant's argument regarding pretext.

On August 15, 2006, Plaintiff provided a letter from her psychologist recommending that she take a temporary medical leave of absence from her job "[d]ue to her psychological condition" and stated that she needed advanced sick leave to cover the same.  By letter dated August 21, 2006, Mr. Kashinski requested additional information from Plaintiff including specific information about the nature of her condition from a physician.  Mr. Kashinski also cited a provision from DOI's manual governing sick leave that provides

> Advance sick leave may be granted only in cases of serious disability or illness and when required by the exigencies of the situation ... A certificate of a physician or practitioner or other appropriate written evidence will be obtained for all periods of advance sick leave.

Plaintiff provided the requested information just prior to the end of August.  Plaintiff also provided Mr. Kashinski with a memo addressing rules on advancing sick leave.  This memo

provides that DOI required "something that supports the medical necessity of the absence" but that DOI was "not seeking to intrude on the employee's privacy" and that "it is not necessary to get details about the nature of the condition."  On September 5, 2006, Plaintiff followed up on her request and advised Mr. Kashinski that "[n]ot knowing whether I am going to lose a week's pay is considerably adding to my stress ...."  Plaintiff alleges that Mr. Kashinski did not advise her that her leave was approved until October 12, 2006.

Plaintiff was arguably unnecessarily forced to jump through some hoops and did not know if she would be paid for her five-day doctor-recommended leave of absence for some period of time.  Her request for five days advanced sick leave was, however, ultimately approved.   In light of this favorable response to Plaintiff's request, I conclude that the small obstacles and slight delay in the approval of Plaintiff's request for advanced sick leave would not deter a reasonable person from making or supporting a charge of discrimination.  It follows that Defendant's handling of Plaintiff's request for advanced sick leave does not constitute a materially adverse employment action as a matter of law.

Because I conclude that Plaintiff cannot establish that the handling of her request for advanced sick leave was a materially adverse employment action, Defendant is entitled to judgment as a matter of law on Plaintiff's claim that the handling of this request was retaliatory. I will give further consideration to this issue in the context of Plaintiff's claim for a hostile work environment.

**I.  Hostile Work Environment**

To establish a retaliation claim based on a hostile work environment, a plaintiff must show that the harassment is sufficiently severe to qualify as a materially adverse action.

26

*McGowan*, 472 F.3d at 743. "The behavior complained of must render 'the workplace ... permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (*quoting Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993)).  Whether a workplace is "hostile" or "abusive"  can only be determined by looking at all the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris*, 510 U.S. at 23.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview."  *Id.* at 21.

Plaintiff asserts that Defendant took the following adverse employment actions against her: denial of training; failure to assign work assignments commensurate with experience and grade level; improper attempts to force her to work under Mr. O'Nan's supervision; issuance of a written reprimand; imposition of a 14-day suspension; intentional humiliation by escorting her out of the building; threatening to give her the lowest scores on her performance appraisal which would result in termination; giving her actual scores on her performance appraisal that would make her susceptible to termination and deny her performance awards; forcing her to jump through hoops to obtain advanced sick leave; threatening criminal prosecution of her; reporting her to the OIG and initiating a federal investigation into her conduct with respect to materials disclosed through discovery in her EEOC case; failing to tell her the results of the investigation and forcing her to live in fear of termination for over a year; refusing to recognize her superior

performance in an employment case in her performance appraisal based on her EEOC

complaints; and monitoring, targeting, and otherwise attempting to create a hostile work

environment for Plaintiff. *See* Response, p. 30.

Some of the actions identified by Plaintiff have already been addressed as discrete

employment actions, and the parties disagree as to whether actions which independently support

a retaliation claim can also support a hostile work environment claim. Determination of this

issue is not necessary to resolution of Defendant's motion for summary judgment. First, I note

that the discrete employment actions discussed above were identified by Defendant. It is unclear

from Plaintiff's response or other pleadings filed by Plaintiff whether she is claiming that each of

these actions can independently support a claim for retaliation under Title VII. But, I have

already concluded that only the investigation into Plaintiff's alleged Privacy Act violations in

2007 constitutes a separately actionable materially adverse employment action. Even if this

investigation is considered in the context of Plaintiff's claim for hostile work environment, I

conclude that Plaintiff there is insufficient evidence to establish that Plaintiff was subjected to an

objectively abusive working environment. In reaching this conclusion I rely, in part, on the

weaknesses of many of Plaintiff's claims that have been discussed throughout this Order.

For the reasons set forth above, IT IS HEREBY ORDERED that

1. Defendant's Motion for Summary Judgment [Doc # 22] is GRANTED IN PART and

DENIED IN PART;

2. Plaintiff's claims that Defendant retaliated against her by suspending her for fourteen

days; by her January 27, 2006 and October 16, 2007 performance appraisals; by her work

assignments; by the denial of request for transfer to the Resources Division; by the denial of her

request to attend two training seminars; and by its handling of her request for advanced sick leave are DISMISSED WITH PREJUDICE;

3.   Plaintiff's claim for a retaliatory hostile work environment is DISMISSED WITH PREJUDICE; and

4.   Defendant's Motion for Summary Judgment is DENIED only with respect to Plaintiff's claim that Defendant retaliated against her by the investigation into her alleged Privacy Act violations in 2007.

Dated: February ___17___, 2010 in Denver, Colorado.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE